Mitchell M. Breit (NJ Bar 043741989)
SIMMONS HANLY CONROY
112 Madison Avenue
New York, NY 10016-7416
(212) 784-6422
mbreit@simmonsfirm.com

T. Christopher Tuck (*pro hac vice* application to be submitted)
RICHARDSON, PATRICK,WESTBROOK & BRICKMAN, LLC
1037 Chuck Dawley, Blvd.
Building A
Mt. Pleasant, SC  29464
(843) 727-6500
ctuck@rpwb.com

Terry W. West (*pro hac vice* application to be submitted)
Bradley C. West (*pro hac vice* application to be submitted)
THE WEST LAW FIRM
124 West Highland
Shawnee, OK  74802
(405) 275-0040
terry@thewestlawfirm.com
brad@thewestlawfirm.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES STEVENSON, individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) ) |
| MAZDA MOTOR OF AMERICA, INC., | ) ) ) |
| Defendant. | ) ) ) |

Case No.:

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................... 1

II.     JURISDICTION AND VENUE ............................................................................. 3

      A.    Jurisdiction ...................................................................................................... 3

      B.    Venue ................................................................................................................ 3

III.    PARTIES ..................................................................................................................... 4

      A.    Plaintiff James Stevenson ............................................................................ 4

      B.    Defendant Mazda Motor of America, Inc. ............................................... 4

IV.     FACTUAL ALLEGATIONS .................................................................................. 4

      A.    Mazda's Advertising and Marketing Programs Falsely Represent that New
          Mazda Vehicles Will be Free From Defects. ........................................... 4

      B.    Mazda's Vehicles Commonly Feature a Defective VVT Assembly ................ 8

      C.    Mazda's Knowledge Regarding Defects in its VVT Assembly ..................... 10

          1.    Mazda Has Had Actual Knowledge About Defects in the VVT
               Assembly of Defective Vehicles Since at Least 2007. ............................. 10

          2.    Mazda Has Received Multiple Consumer Complaints Regarding
               Defects in the VVT Assembly and the Unexpected Engine Failure. .... 12

      D.    Mazda Fraudulently Concealed Material Facts About Defects in the VVT
          Assembly ....................................................................................................... 15

      E.    Mazda Belatedly Initiates a Sham "Special Service Program" for Owners of
          Defective Vehicles ....................................................................................... 16

          1.    Mazda, through its "Special Service Program," Continues to Mislead
               Owners of Defective Vehicles About the Source of the VVT Defect. ... 17

          2.    Mazda's Has Unfairly Excluded Many Vehicles From its "Special
               Service Program." ...................................................................................... 18

          3.    Mazda's "Special Service Program" Imposes Sham Warranty
               Requirements that Were Not required Under the Original Powertrain
               Warranty and its Powertrain Warranty Extension Program. ................ 19

F.    A Failed VVT Assembly Results in Substantial Economic Harm and Creates
      a Safety Risk to Owners of Defective Vehicles. ................................................ 20

G.    Plaintiff and Class Members Did Not Know, Nor Could They Have
      Reasonably Known, About Mazda's Misconduct. ........................................... 21

H.    Plaintiff James W. Stevenson's Experience ........................................................ 22

V.    CLASS ACTION ALLEGATIONS ................................................................................ 23

      A.    The Proposed Class Satisfies Rule 23(a). ................................................... 24

            1.    Numerosity and Ascertainability ................................................... 24

            2.    Predominance of Common Issues .................................................. 24

            3.    Typicality ................................................................................................... 25

            4.    Adequacy ................................................................................................... 25

      B.    The Proposed Class Satisfies Rule 23(b). ................................................... 25

VI.   CAUSES OF ACTION ................................................................................................... 26

VII.  PRAYER FOR RELIEF ................................................................................................... 38

## I.    INTRODUCTION

1.    This action is brought to remedy unfair and unlawful practices by Defendant Mazda Motor of America, Inc. ("Mazda") in assembling, manufacturing, marketing, and warranting Mazda vehicles utilizing an engine equipped with a defective continuous variable valve timing ("VVT") assembly.[1] As discussed herein, as part of the purchase and leasing process, Mazda has consistently advertised and warranted that new Mazda vehicles will be free from defects.

2.    Contrary to Mazda's advertisements and warranties, Mazda's application of VVT technology in its engines is a failure in one critical respect: the Mazda VVT assembly is defective at the point of sale and has a propensity to fail prematurely. The defective Mazda vehicles at issue (defined further below and referred to as "Defective Vehicles") suffer from a defect that causes the engine's timing chain to loosen or detach. Consequences of this defect include partial and total failure of the engine. Although this

---

[1] Application of continuous VVT technology in an internal combustion engine for automotive use was first patented in the United States by engineers with the Italian automaker Fiat. *See* U.S. Patent 3,641,988, issued February 15, 1972. General Motors patented a version of VVT in 1975. The Italian automaker Alfa Romeo introduced VVT to the American market in its 1980 Spider 2.0 model. By the early 1990's, most major automobile manufacturers implemented VVT through one means or another.

VVT technology is desirable in an automobile engine because it can provide increased control over the combustion process compared to engines not equipped with the technology. Most modern VVT systems use a cam phaser that rotates the position of each camshaft relative to the timing chain. The cam phaser has two basic components: an outer sprocket connected to the timing chain and an inner rotor (connected to the camshaft) that varies the valve timing by adjusting the rotation angle of the cam. This inner rotor consists of a set of lobes, and oil fills the space between the outer housing and the lobes. Left alone, the rotor will simply spin at the same rate as the outer housing. If oil is added to one side of the lobe and removed from the other, the rotor moves, which in turn rotates the camshaft and results in variable valve timing.

defect is covered under Mazda's powertrain warranty, Mazda fails to repair the defect under warranty.

3.      Mazda has had actual knowledge about the VVT assembly defect since at least 2007. Unfortunately, as part of the purchase process, Mazda has concealed material facts regarding the defect from purchasers and lessors of vehicles equipped with a defective VVT assembly.

4.      When owners of Defective Vehicles present their vehicles for repair or replacement of the Mazda VVT System and resulting engine damage, Mazda's practice is to deny warranty claims by alleging that the owners failed to provide proof satisfactory to Mazda of engine oil changes at a frequency satisfactory to Mazda, or by applying Mazda's subjective interpretation of engine condition and presumed inadequate maintenance at the time that warranty service is sought.

5.      Mazda's fraudulent and unlawful conduct has resulted in substantial harm to Plaintiff and the Class.  As a result of the defect, Plaintiff and the Class have not received the economic benefit of their bargain, overpaid for their vehicles and/or made lease payments that were too high, and suffered further damages by incurring out-of-pocket costs associated with repairing the VVT assembly defect in their vehicles. Plaintiff and the Class are entitled to relief, including injunctive and declaratory relief, compensatory damages, and punitive damages to deter future misconduct.

## II.   JURISDICTION AND VENUE

### A. Jurisdiction

6.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from one Defendant, there are more than 100 class members in New Jersey and the aggregate amount in controversy exceeds $5,000,000.

7.     This Court has personal jurisdiction over Mazda because it does business in New Jersey and has purposefully availed itself of the privilege of conducting business activities within the State of New Jersey.  Mazda has sufficient minimum contacts with New Jersey so as to render the exercise of jurisdiction consistent with traditional notions of fair play and substantial justice.  Mazda is registered to conduct business in New Jersey, and it has sufficient minimum contacts in New Jersey and otherwise avails itself of markets within New Jersey through the promotion, sale, marketing, and distribution of its vehicles to render the exercise of jurisdiction by this Court proper and necessary.

### B. Venue

8.     Venue is proper in the this District under 28 U.S.C. 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred and/or emanated from this District, and Mazda has caused harm to class members residing in this District.

## III.   PARTIES

### A.  Plaintiff James Stevenson

9.      Plaintiff James Stevenson is a resident of Bedminster, New Jersey.  At all relevant times, Mr. Stevenson purchased a 2008 Mazda CX7 vehicle equipped with a Mazda VVT assembly and suffered financial loss resulting from defects in the Defective Vehicle's VVT assembly.  Unless specifically noted otherwise, the terms "Plaintiff" and "Plaintiffs" as used herein are interchangeable.

### B.  Defendant Mazda Motor of America, Inc.

10.      Defendant Mazda Motor of America, Inc. ("Defendant" or "Mazda") is a corporation organized and existing according to the laws of the State of California.  At all times relevant hereto, Defendant was in the business of promoting, marketing, manufacturing, and distributing the Defective Vehicles. At all times relevant, Mazda developed, manufactured, and sold the Defective Vehicles in interstate commerce.

## IV.   FACTUAL ALLEGATIONS

### A.  Mazda's Advertising and Marketing Programs Falsely Represent that New Mazda Vehicles Will be Free From Defects.

11.      As part of its marketing and advertising program, Mazda has consistently marketed its vehicles as coming with a warranty that provides coverage in the event that a repair is needed in the first few years after a new vehicle's purchase. As part of its bumper-to-bumper and powertrain warranties, Mazda has consistently represented that "new Mazda cars and trucks will be free of defects" during specified warranty periods.

4

12.     Mazda's representations that "new Mazda cars and trucks will be free of defects" were made on Mazda's website, which Mazda made available to the general public.   In addition, as part of the purchase and lease process, Mazda provides a manufacturers' warranty booklet that similarly warrants that new Mazda cars and trucks will be free from defects. Examples of such representations follow.

13.     Upon information and belief, Mazda utilized common representations in its warranty booklets, sold with all Defective Vehicles, that the vehicles were free of defects.   Plaintiff's 2008 Warranty Information, for example, states that his Mazda vehicle is free from defects in material and workmanship.   Ex. A.

14.     With respect to model year 2006 to 2008 vehicles, Mazda's website advertising uniformly represented:

> Every new Mazda comes with a comprehensive warranty that provides coverage in the unlikely event a repair is needed in the first years after your vehicle's purchase. Please check your warranty information booklet for your specific vehicle's warranty information. We'll be right there with you all the time, wherever you go by providing warranty coverage and roadside assistance so that the total enjoyment of driving a Mazda never stops.
>
> **2007 and 2008 Vehicles:**
>
> BUMPER-TO-BUMPER
>
> Mazda warrants that ***new 2007 and 2008 Mazda cars and trucks will be free of defects*** with normal use and prescribed maintenance for 36 months or 36,000 miles, which ever comes first. Ordinary maintenance items or adjustments, parts subject to normal wear and replacement and certain other items are excluded. This transferable "limited warranty" is included on all new Mazda vehicles sold and serviced in the United States.

POWERTRAIN LIMITED WARRANTY

Mazda warrants that **the Powertrain Components of new 2007 and 2008 Mazda cars and trucks will be free of defects** with normal use and prescribed maintenance for 60 months or 60,000 miles, which ever comes first. Ordinary maintenance items or adjustments, parts subject to normal wear and replacement and certain other items are excluded. This "limited warranty" is transferable during the warranty period on all new Mazda vehicles sold and serviced in the United States.

Complement the limited warranty on your new vehicle with the Mazda Extended Protection Plan, the only service agreement backed by Mazda. See your Mazda dealer for details.

**2006 Vehicles:**

BUMPER-TO-BUMPER

Mazda warrants that **new 2006 Mazda cars and trucks will be free of defects** with normal use and prescribed maintenance for 48 months or 50,000 miles, which ever comes first. Ordinary maintenance items or adjustments, parts subject to normal wear and replacement and certain other items are excluded. This transferable "limited warranty" is included on all new Mazda vehicles sold and serviced in the United States.

Complement the limited warranty on your new vehicle with the Mazda Extended Protection Plan, the only service agreement backed by Mazda. See your Mazda dealer for details.

Ex. B; emphasis added.

15.    With respect to model year 2009 vehicles, the advertising on Mazda's

website uniformly represented:

Every new Mazda comes with a comprehensive limited warranty that provides coverage in the unlikely event a repair is needed in the first years after your vehicle's purchase. We'll be right there with you all the time, wherever you go by providing warranty coverage and roadside assistance so that the total enjoyment of driving a Mazda never stops.

…

**BUMPER-TO-BUMPER LIMITED WARRANTY**

Mazda warrants **that new Mazda cars and trucks will be free of defects** with normal use and prescribed maintenance for 36 months or 36,000 miles, whichever comes first. Ordinary maintenance items or adjustments, parts subject to normal wear

6

and replacement and certain other items are excluded. This transferable "limited warranty" is included on all new Mazda vehicles sold and serviced in the United States.

**POWERTRAIN LIMITED WARRANTY**

Mazda warrants that *the Powertrain Components of new Mazda cars and trucks will be free of defects* with normal use and prescribed maintenance for 60 months or 60,000 miles, whichever comes first. Ordinary maintenance items or adjustments, parts subject to normal wear and replacement and certain other items are excluded. This "limited warranty" is transferable during the warranty period on all new Mazda vehicles sold and serviced in the United States.

Ex. C; emphasis added.

16.     With respect to model year 2010 vehicles, the advertising on Mazda's

website uniformly represented:

Every new Mazda comes with a limited warranty that provides coverage in the unlikely event a repair is needed in the first years of ownership. . . . Keep in mind, Mazda warranty coverage is based on the following recommended factory maintenance - - a convenient way to store your service records is in the MyMazda Service History Pages. It's easy to complete and a good way to manage your service history.

…

**BUMPER-TO-BUMPER LIMITED WARRANTY**

Mazda warrants that *new Mazda cars and trucks will be free of defects* with normal use and prescribed maintenance for 36 months or 36,000 miles, whichever comes first. Ordinary maintenance items or adjustments, parts subject to normal wear and replacement and certain other items are excluded. This transferable "limited warranty" is included on all new Mazda vehicles sold and serviced in the United States.

**POWERTRAIN LIMITED WARRANTY**

Mazda warrants that *the Powertrain Components of new Mazda cars and trucks will be free of defects* with normal use and prescribed maintenance for 60 months or 60,000 miles, whichever comes first. Ordinary maintenance items, adjustments, parts subject to normal wear and certain other items are excluded. This "limited warranty" is transferable during the warranty period on all new Mazda vehicles sold and serviced in the United States.

7

Ex. D; emphasis added.

17.     Mazda made the foregoing representations with the intent of generating trust in the Mazda brand and inducing customers into purchasing or leasing Mazda vehicles. Mazda knew that the purchasers and lessors of Defective Vehicles expected that such vehicles would be free of defects, and consumers would purchase or lease vehicles without assurance that the vehicles would be free from defects. Purchasers of Mazda vehicles, including Plaintiff and class members, purchase their vehicles trusting and relying on Mazda that they would be free of defects during the warranty period, and Mazda would in fact repair any defect that existed during the warranty period. Mazda's statements were intended to and did cause consumers to purchase or lease Mazda vehicles, including the Defective Vehicles at issue herein.

18.     Mazda's representations were deceptive and likely to mislead consumers. Despite Mazda's proclamations that "new Mazda cars and trucks will be free of defects," Mazda vehicles at issue in this Class Action Complaint featured a defective VVT assembly. Such vehicles were defective with normal use and maintenance during the warranty period. As discussed below, Mazda has known since at least 2007 that the VVT assemblies in these vehicles were defective.

**B.  Mazda's Vehicles Commonly Feature a Defective VVT Assembly**

19.     From 2001 to the present, Mazda offered VVT-equipped engines in various vehicles ranging from roadsters to sport utility vehicles. This VVT assembly is, in part, comprised of the following components: (a) a variable valve timing actuator; (b) a variable valve timing rotor lock pin; (c) a stopper pin cap; (d) a spring; and (e) a chain.

8

The Mazda VVT assembly and related service literature were designed, tested, produced, made, constructed, labeled, and sold by Mazda.

18.    Mazda marketed its VVT engine by noting that the key objective of the engine is to achieve "more torque, horsepower and smoothness, while delivering improved fuel economy, lower emissions and minimal maintenance requirements." Mazda described the Mazda VVT assembly supplied with Defective Vehicles as providing "linear power delivery, exceptional fuel economy and low emissions, together with exemplary smoothness and class-leading performance and drivability."

19.    The engines equipped on certain Mazda vehicles suffer from a defect that causes the engine's timing chain to loosen or to detach. Consequences of this defect include partial and total failure of the engine, which creates a safety risk for drivers and occupants of Defective Vehicles. This defect existed at the time of manufacture and purchase. Although this defect is covered under Mazda's powertrain warranty, Mazda fails to repair the defect under warranty.

20.    These Defective Vehicles are comprised of Mazda's "L-series" engines: 2.0L (LF), 2.3L (L3), and Turbo (L3T) (the "Defective Engines"). As used in this Class Action Complaint, "Defective Vehicles" refers to the following vehicles manufactured by Mazda and equipped with a Defective Engine:

| Model Name | Production Date |
|---|---|
| Mazda CX-7 | February 14, 2006 through February 26, 2010 |
| Mazdaspeed 3 | June 28, 2006 through February 27, 2010 |

| | |
|---|---|
| Mazdaspeed 6 | August 4, 2005 through June 30, 2007 |
| Mazda 6 (2.3L) | From 2003 to 2008 |
| Mazda3 | 2004 to December 1, 2007 |
| Mazda5 | 2006 through December 1, 2007 |
| MX-5 | 2006 through December 1, 2007 |

21.     The Defective Vehicles commonly incorporated VVT technology. The continuous VVT technology as implemented by Mazda suffers from a defect that causes mechanical failure of the VVT assembly.

22.     Mazda's application of VVT technology in its engines is a failure in at least one critical respect: the Mazda VVT assembly has a propensity to fail prematurely. Instances have been reported of Mazda VVT assembly failure on vehicles with as little as one year in service and as low as 20,000 miles.

23.     The Mazda VVT assembly was defective at the initial point of manufacture and sale in that it causes engine failure, leading to vehicle inoperability, both during the stated duration of the express warranties and the expected useful life of the Mazda VVT assembly itself. Although this defect is covered under Mazda's powertrain warranty, Mazda has concealed the defect and its obligation to repair the defect from owners of Defective Vehicles during the warranty period.

**C.  Mazda's Knowledge Regarding Defects in its VVT Assembly**

    **1. Mazda Has Had Actual Knowledge About Defects in the VVT Assembly of Defective Vehicles Since at Least 2007.**

24.     Upon information and belief, Mazda realized that its implementation of Mazda VVT technology in the Defective Engines contained a serious defect at least as

10

early as 2007, when Mazda issued to its authorized dealers its Technical Service Bulletin ("TSB") 01-043/07 dated November 29, 2007.[2] Because Mazda would have conducted an investigation of the defect prior to issuance of the TSB, Mazda's actual defect knowledge extends prior to November 2007. The November 29, 2007 TSB states:

> When the engine is started, some vehicles may exhibit a loud ticking noise from the variable valve timing actuator at first start for a couple of seconds. This is caused by the lock pin of the variable valve timing actuator not fully engaging. Heat treatment has now been added around the hole of the variable valve timing rotor lock pin to prevent this from happening.

25.     Upon information and belief, TSB 01-043/07 applied to only three models of Mazda cars: the 2006-2007 Mazdaspeed6, 2007 Mazdaspeed3, and the 2007 CX-7, all with manufacture dates before April 1, 2007.

26.     Mazda determined that its Mazda VVT assembly problems were caused, at least in part, by what Mazda considered to be inadequate or improper hardening of the VVT assembly components at the time of their manufacture by Mazda.

27.     Mazda made several attempts to engineer a remedy for a defective Mazda VVT assembly. Mazda's efforts failed. Examples of these efforts are Mazda's release of at least four different iterations of the VVT Actuator Gear for non-turbocharged engines:

> a.  LF94-12-4X0 VVT Actuator Gear: original until 19 September 2005 production.

---

[2]     The TSB issued by Mazda in November 2007 demonstrates Mazda's knowledge of the Mazda VVT assembly defect as of that date; discovery may push that date substantially earlier. Notwithstanding its awareness of the defect, Mazda continued to market, sell, defectively repair, and warranty vehicles suffering from the Mazda VVT assembly defect.

b. LF94-12-4X0A VVT Actuator Gear: from 19 September 2005 to 1 December 2007 production.

c. LF94-12-4X0B VVT Actuator Gear: from 1 December 2007 to 1 March 2010 production.

d. LF94-12-4X0C VVT Actuator Gear: from 1 March 2010 production to present.

28.     The November 2007 TSB was superseded by replacement TSB 01-002/08 dated January 16, 2008, which instructed authorized dealers to replace additional parts related to the Mazda VVT assembly and to use new repair procedures.

29.     Upon information and belief, TSB 01-028/10, dated August 20, 2010, expanded the reach of the entire series of VVT Technical Service Bulletins to the other Mazda models that use a non-turbocharged engine, thus significantly enlarging the number of vehicles Mazda determined to be equipped with a defective VVT assembly.

30.     Mazda updated the November 2007 Technical Service Bulletin relating to VVT at least seven times from when it was first issued, to the most recent, dated February 23, 2011(TSB 01-010/11), with the various iterations calling for additional parts replacement, new repair procedures, and expansion of the models and years of production to which the TSB applies.

**2. Mazda Has Received Multiple Consumer Complaints Regarding Defects in the VVT Assembly and the Unexpected Engine Failure.**

31.     Owners of Defective Vehicles have reported unexpected catastrophic engine failures arising out of the Mazda VVT assembly defect.  Exemplars of consumer complaints are as follows:

a.     Complete engine failure without warning while traveling 70 mph down 40 East Xmas eve evening. I prayed my child and I wouldn't

end up dead while trying to cut across two lanes to get off the road in my vehicle without engine power. *TR

NHTSA ID Number 10374877, incident December 24, 2010 (CX-7).

b.     End of summer service, I complained about a smell coming from the engine like burned breaks the technician told me it was nothing major and that they will monitor it on the next service call. I took it for service on mid December and they serviced the transmission, oil change and no mention of major problems. On December 31st on my way to Silverthorne from Denver the engine stopped running on a steep hill shutting down power steering and breaks, I was able to stop the car and tow the car back to Denver, I was just informed that my three year old car needs a new engine worth $7,200 VVT actuator and timing chain were shot and the engine is dead. I took this car to the dealership for service regularly and nothing was mentioned. I have done research and there are hundreds of people with the same problem, please what can you do? I only have 93k miles and the car is three years old. *TR

NHTSA ID Number 10374671, incident December 31, 2010 (CX-7).

c.     My wife's 2007 CX7 was in a parking lot. My wife started it up, came to a stop sign and the car died without warning. It had 65,000 miles on it (5000 over the warranty) and wasn't even 3 years old. We had always gotten regular oil changes and had just had one the week before. We had it towed to the nearest Mazda dealer. The first time I talked to a service tech he mentioned the timing chain breaking. Later, they explained it as a valve (variable valve timing actuator?) failing and causing oil chain failure (jumping the gearing). My bill ($7500 - new engine) only states internal parts failure. They tried to indicate the oil was dirty even thought the oil was changed less than a week prior. After reading through many CX7 forums online it seems they were trying to build a case for engine sludge to cover themselves…

NHTSA ID Number 10373063, incident September 15, 2010.

d.     TL* The contact owns a 2007 Mazda CX-7. While traveling 60 mph the contact noticed that the check engine light had appeared on the dashboard, seconds later the contact noticed that the vehicle had suddenly shut off without warning. The vehicle was taken to the dealership where the contact had the engine replaced due to the timing chain breaking. There were no prior warnings. The current mileage was 61000 and the failure mileage was 58000.

13

NHTSA ID Number 10355828, incident June 27, 2010.

e.   2007 Mazda CX7 - Turbo broke while driving causing tremendous squealing sound and loss of power. Able to drive home and had towed to Mazda dealership. Service mgr called me saying they checked car over and could not find anything wrong with it and asked if I wanted an oil change. I said go ahead with an oil change but there is definitely something wrong with car and to check again. Mgr called back later saying a screw in the turbo had come loose, turbo was broken, I needed a whole new engine and it would cost $9,000. Car had 34,000 miles and still under warranty. I fax'd copies of oil change receipts. Mazda North America denied warranty claim saying my oil receipts were unverifiable. MNA told me they would not verify my receipts. They claimed there was "sludge" and that caused it to break and I hadn't taken care of it. It was a leased vehicle with only 3 months left to pay. Had just started a new job after being unemployed and had to rent a car costing $650 and then go buy a Kia causing extreme financial & emotional duress. I told the serv mgr that I could have been killed and found out these cars were engineered incorrectly causing them to get too hot causing "sludge", that I knew he knew about the issue because a service bulletin had been released Jan 08 stating the exact problem, and Mazda was trying to avoid a recall. He stated that it was "Mazda North America", and not him and if it were up to him he would fix the car under warranty. I told him I was under extreme duress and that Mazda should do the right thing and fix the car. They refused so had to leave the car at the dealership, and walk away. Now Mazda says I owe them $5,000. Filed complaints with BBB and Attorney General. It is an outrage that so many Mazda CX7 owners have had same nightmare and Mazda does not care about the safety of it's customers. Please help us. *TR

NHTSA ID Number 10422774, incident June 10, 2010.

f.   Driving the car on the turnpike and heard what sounded like a blowout. Immediately pulled car to the side of the road. Noticed the engine was not running. Attempted to restart, but made noise and would not start. Called husband, who arrived and said the engine had come apart. There were physical pieces of the engine block up to the size of a golf ball in the skid plate under the engine, as well as oil underneath the car and on the road. We had received a letter from Mazda a few weeks earlier indicating a problem with the seals in the turbo and a stop pin in the variable valve timing (VVT) and if the vehicle exhibited any of the symptoms to bring it

14

to the dealer for evaluation and repair, up to 7 years/70k miles. Called dealer and Mazda HQ next morning. Mazda customer relations acted if they were interested in the root cause and reason for failure, especially since it was 1k miles out of the coverage period. Mazda paid for tow to dealer, but once there Mazda customer relations wanted me to pay for the engine teardown and began to dance around the warranty extension for the VVT problem informing me that Mazda is rigid on the 7yrs/70k miles. I questioned Mazda on the discussion the previous day regarding the post-mortem teardown and analysis, where I was given the impression Mazda would take care of the tow and the teardown to determine root cause of the failure and then the claim would be evaluated from there. Mazda did a complete turn around and would not honor their initial word, now informing me I would be financially responsible for any work performed on the car. *TR

NHTSA ID Number 10460013, incident April 25, 2012 (Mazdaspeed6).

### D. Mazda Fraudulently Concealed Material Facts About Defects in the VVT Assembly

32. Despite Mazda being aware of the Mazda VVT assembly defect and devising its first repair procedure in 2007, Mazda did not warn owners of Defective Vehicles of the defect. Instead, Mazda restricted dissemination of this knowledge to its authorized dealer service departments. Furthermore, the terms of each of the Technical Service Bulletins instructed Mazda service personnel that they could perform diagnosis and repairs of defective Mazda VVT assemblies only if the problem is brought to the dealer's attention through "verified customer complaints on vehicles eligible for warranty repair." Mazda thus put the burden on owners to diagnose when a Mazda VVT assembly failure occurred, and further made it incumbent on the owner to bring the vehicle to a Mazda dealer, while at the same time withholding from owners the very information required to diagnose a Mazda VVT assembly failure.

15

33.     As discussed above, in January 2008, Mazda issued TSB 01-002/08, which instructed authorized dealers to replace additional parts related to the Mazda VVT assembly and to use new repair procedures.  However, owners of Defective Vehicles who made a verified complaint of engine noise, or who suffered VVT failure and whose vehicles were repaired by Mazda pursuant to TSB 01-043/07, were not told by Mazda that their vehicles had been repaired with inadequate parts and repair procedures. To this date, Mazda has not advised owners of repaired Defective Vehicles that their vehicles contain parts deemed inadequate by Mazda, and/or that the repair procedures for those vehicles were flawed.

34.     Mazda knew of and concealed the VVT assembly defect that is present in every Defective Vehicle, along with the associated repair costs, from Plaintiff and the Class, both at the time of sale and repair and continuing thereafter. Mazda had a rational reason for not sharing with owners Mazda's knowledge of the VVT defect: repair of the defect is expensive. Upon information and belief, the first TSB from November 2007 (01-043/07), provides that the most basic repair -- when a VVT failure has not yet caused any collateral damage to the engine -- costs hundreds of dollars in parts and consumes more than three hours of service technician time. Some Defective Vehicles have suffered multiple VVT failures.

### E.  Mazda Belatedly Initiates a Sham "Special Service Program" for Owners of Defective Vehicles

35.     More than four years after issuing its first TSB on the VVT defect, Mazda finally advised owners of the existence of the defect. Mazda's form of notice, however,

was calculated to minimize the number of vehicles that would be returned to Mazda for repair.

36.    By letter dated January 2012, Mazda sent a letter to the last known addresses of certain vehicle owners, advising the owners that Mazda "decided to conduct a Special Service Program ("SSP") to extend the warranty coverage for the specific repair of variable valve timing (VVT) noise and/or timing chain noise concern" on certain vehicles equipped with the L3T engine. The SSP simply extends Mazda's existing powertrain warranty coverage for the VVT assembly by one year or 10,000 miles, whichever comes first.[3]

### 1. Mazda, through its "Special Service Program," Continues to Mislead Owners of Defective Vehicles About the Source of the VVT Defect.

37.    Mazda's letter advises owners that a "loud ticking noise may be exhibited from the VVT when the engine is first started at cold condition." Mazda refers to the defect condition as a "noise concern" when in fact the "noise" is caused by the manifest defect. Appearance of the "noise concern" means that engine failure is imminent.

38.    The letter does not recommend all owners deliver their vehicles to a Mazda dealer for inspection. If an owner does believe their vehicle emits a "loud ticking noise," the letter does not warn the owner to cease driving the vehicle.

---

[3]    Mazda provides a powertrain warranty with the Defective Vehicles. For example, the warranty terms for some Defective Vehicles state "Mazda warrants that the Powertrain Components of new Mazda cars and trucks will be free of defects with normal use and prescribed maintenance for 60 months or 60,000 miles, whichever comes first. Ordinary maintenance items, adjustments, parts subject to normal wear and certain other items are excluded." At no time did Mazda state that the Mazda VVT assembly is a part excluded from warranty as being "subject to normal wear" or that the Mazda VVT assembly is one of "certain other items" that are excluded from the warranty.

17

39.     Instead, the letter calmly proposes "an appointment with a Mazda dealer." Mazda's letter thus seeks to dispel any sense of urgency when, in fact, a vehicle demonstrating a "loud ticking noise" means that the vehicle has suffered a Mazda VVT assembly failure and the likelihood of catastrophic engine failure is dramatically increased.

40.     Mazda's misleading description of the VVT defect as a "noise concern" is part of Mazda's policy of denying repairs to owners of Defective Vehicles. Mazda's intent is that owners will delay presenting their vehicle for repairs until after the purported conclusion of the warranty period. When owners of Defective Vehicles do present their vehicles for repairs, Mazda then finds ways to deny repairs through exclusions and sham warranty requirements.

### 2. Mazda's Has Unfairly Excluded Many Vehicles From its "Special Service Program."

41.     The SSP excludes Defective Vehicles from coverage. The following Defective vehicles are excluded under the SSP:

- Mazda6 (2.3L)     (2003 to 2008)
- Mazda3             (2004 to 2008; vehicles with VINs lower than JM1BK******864673 produced before December 1, 2007);
- Mazda5             (2006 to 2008; vehicles with VINs lower than JM1CR******306808 produced before December 1, 2007);

                      and
- MX-5               (2006 to 2008; vehicles with VINs lower than JM1NC******146287 produced before December 1, 2007).

42.     Vehicles with more than seven years of service or 70,000 miles were excluded from the SSP. Mazda does not explain why a defective Mazda VVT assembly

18

is warrantable at less than 70,000 miles or seven years of service, but is not warrantable thereafter.

### 3. Mazda's "Special Service Program" Imposes Sham Warranty Requirements that Were Not required Under the Original Powertrain Warranty and its Powertrain Warranty Extension Program.

43.     The letter states that the warranty extension "does not apply if the problem is caused by poor vehicle maintenance" (insufficient oil changes or using engine oil of viscosity lower than 5W-30). In practice, Mazda relies on this warranty condition as a pretext to deny warranty benefits to owners with a defective Mazda VVT assembly.

44.     Owners of vehicles that are within the scope of the SSP and are not excluded under the SSP due to vehicle age or mileage must establish to the satisfaction of Mazda that the vehicle had been "properly maintained" -- a subjective decision made by Mazda personnel. Mazda's judgment of "properly maintained" is not impartial. Owners unable to provide complete documentation of oil changes to Mazda's satisfaction are routinely denied warranty benefits. Because of these and other restrictions imposed on Mazda's original Powertrain Warranty and its Powertrain Warranty Extension Program, many owners continue to shoulder the cost to repair the defective Mazda VVT assembly.

45.     In the Owners Manual and Warranty supplied to owners of Defective Vehicles, Mazda does not state that warranty coverage will be denied by Mazda if owners cause oil changes to be done by anyone other than an authorized Mazda dealer,

or if owners fail to compile and retain independent written proof of oil changes to Mazda's satisfaction.

46.    At no time has Mazda offered to replace all defectively manufactured Mazda VVT assemblies exclusive of Mazda-imposed subjective conditions.  At no time has Mazda offered to replace all defectively-repaired Mazda VVT assemblies exclusive of Mazda-imposed subjective conditions.

### F. A Failed VVT Assembly Results in Substantial Economic Harm and Creates a Safety Risk to Owners of Defective Vehicles.

47.    A failed Mazda VVT assembly can cause a cascade of destruction throughout the engine. Mazda issued a Service Bulletin dated September 22, 2009 (01-042/09), that set out a checklist of things to check for when replacing a failed Mazda VVT assembly. Mazda service technicians were warned that damage can include the variable valve timing actuator itself (which can crack and shed pieces that eventually lodge in the oil pan or chain area), the timing chain tensioner, the oil filter body, the oil strainer, the oil pan, the entire cylinder head assembly, and the engine's dual camshafts. A failed Mazda VVT assembly that does not destroy or "total" a Defective Engine can require repairs costing in excess of $3,000.

48.    A failed Mazda VVT assembly will cause the timing chain to stretch and even to break. Timing chain damage can lead to catastrophic, permanent failure of the engine. In these instances, Mazda's repair procedure is to remove the entire engine and replace with a new engine. Mazda dealerships have charged class members in excess of $8,000 to replace engines damaged by failure of the Mazda VVT assembly.

49.     In addition, a failed Mazda VVT assembly creates a great safety risk for owners, drivers, and occupants of Defective Vehicles. A failed VVT assembly can result in engine failure while the vehicle is in operation, at any time, and under any driving condition.

**G.  Plaintiff and Class Members Did Not Know, Nor Could They Have Reasonably Known, About Mazda's Misconduct.**

50.     Plaintiff and the Class had neither actual nor constructive knowledge of the facts supporting their claims for relief despite due diligence in trying to discover the pertinent facts.

51.     Moreover, by its very nature, Mazda's alleged misconduct was self-concealing.  The VVT assembly defect is a latent design defect that is unnoticeable until there is a physical manifestation consisting of engine noise and engine failure. Mazda's knowledge, internal engineering testing, and internal communications regarding the VVT assembly defect are not public information, making it impossible for Plaintiff and the Class to ascertain the existence of the defect until there is a physical manifestation of the defect.

52.     Moreover, as discussed above, Mazda engaged in concealment and failed to disclose to facts that would put Plaintiff and the Class on inquiry notice regarding the VVT assembly defect in Defective Vehicles. As a result of the self-concealing nature of the Defendant's activities, no person of ordinary ability or intelligence would have discovered, or with reasonable diligence, could have discovered the latent defect in Defective Vehicles until after the physical manifestation of the defect.

### H.  Plaintiff James W. Stevenson's Experience

53.     Plaintiff James W. Stevenson is a resident of Bedminster, New Jersey.  Mr. Stevenson purchased a new 2008 Mazda CX-7 vehicle from Morristown Mazda on August 22, 2009.  The 2008 Warranty Information accompanying his purchase stated, "Mazda warrants that your new Mazda Vehicle is free from defects in materials and workmanship, subject to the following conditions."  None of those conditions exempted coverage for the VVT assembly.  In fact, Mazda mailed Mr. Stevenson a January 2012 notice extending his warranty coverage for the VVT assembly "to 7 years (84 months) from the original warranty start date or 70,000 miles, whichever comes first."  On or around November 13, 2013, Mr. Stevenson's vehicle experienced a VVT-related failure and was towed to Open Road Mazda of Morristown for warranty repairs.  The vehicle had 63,562 miles at that time. Despite the fact that Mr. Stevenson had regularly maintained the vehicle by performing his own oil maintenance, Mazda improperly refused warranty coverage.  Mr. Stevenson paid $3384.87 for turbocharger assembly repairs and further incurred rental car charges in the amount of $960.02 because the dealer had no loaner cars available.  Mazda refused warranty coverage for any aspect of its VVT Special Service program for VVT-related failures.

54.     At the time of purchase, Mazda's authorized representative concealed facts regarding the latent defect in the VVT assembly of Mr. Stevenson's Defective Vehicle. Had Plaintiff at the time of purchase known about the Mazda VVT assembly defect present in the Defective Vehicles and/or the monetary costs associated with repairing the defect, he would not have purchased the Defective Vehicles.

55.     As a result of the VVT assembly defect in his vehicle, Mr. Stevenson did not receive the economic benefit of his bargain and has suffered damages by incurring out-of-pocket costs associated with the VVT assembly defect in his vehicle.  Upon information and belief, Plaintiff's purchase of replacement parts for the VVT failure from an authorized Mazda dealer, provided an additional financial benefit to Defendant.

## V.     CLASS ACTION ALLEGATIONS

56.     Plaintiff brings this lawsuit as a class action on behalf of himself and all others similarly situated as members of a proposed plaintiff class action.  This action satisfies the requirements for class certification under Rule 23.

57.     The proposed Class is initially defined as follows:

> All adult persons domiciled or residing in New Jersey who purchased and/or leased at least one vehicle manufactured by Mazda with a defective VVT assembly.

58.     Plaintiff may also seek to certify additional subclasses, as the Court would deem appropriate.  Excluded from the Class are:  (1) employees of Mazda, including their officers and directors; (2) any judge to whom this action is assigned and the judge's immediate family; (3) any owners who have suffered personal injury from Mazda VVT assembly failures; and (4) persons who timely and validly opt to exclude themselves from the Class.

**A.  The Proposed Class Satisfies Rule 23(a).**

    **1.  Numerosity and Ascertainability**

59.    Upon information and belief, the Class is comprised of thousands of Mazda purchasers throughout New Jersey, thus making joinder impractical.

60.    The Class is composed of an easily ascertainable, self-identifying set of individuals and entities whose identities can be readily determined from records maintained by Defendant and its affiliates.

    **2. Predominance of Common Issues**

61.    There are numerous questions of law and fact common to all Class members, and those questions predominate over any questions that may affect only individual Class members.

62.    The predominant common questions include the following:

a. Whether Mazda designed, manufactured, and/or marketed a common class of vehicles with a Mazda VVT assembly prone to premature failure;

b. Whether Mazda conducted, either directly or indirectly, appropriate testing of Mazda VVT-equipped engines;

c. Whether the Defective Vehicles require a common set of repairs;

d. Whether Mazda breached warranties to the class;

e. Whether Mazda falsely and with reckless disregard misrepresented in its advertisements and promotional materials that the Mazda VVT assembly was adequate for use in defective engines of the Mazda vehicle family; and

f. Whether Mazda fraudulently concealed from the Plaintiffs and class members the Mazda VVT assembly defect.

### 3. Typicality

63.     Plaintiff's claims are typical of the claims of the Class.  Plaintiff and the Class were subjected to the same kind of unlawful conduct and the claims of Plaintiff and the Class are based on the same legal theories.

### 4. Adequacy

64.     Plaintiff will fairly and adequately represent and protect the interests of the Class.  Plaintiff has retained counsel with substantial experience in prosecuting consumer class actions.   Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the Class.  Neither Plaintiff nor his Counsel has interests adverse to those of the Class.

### B.  The Proposed Class Satisfies Rule 23(b).

65.     Injunctive and declaratory relief is appropriate as to the Class as a whole because Defendant has acted or refused to act on grounds generally applicable to the Class.

66.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.   Additionally, questions of law or fact common to class members predominate over questions involving only individual members.  Because of the relatively modest economic value of the individual Class members' claims, few would likely seek their rightful legal recourse.

67.     Without a class action, individual Class members would face burdensome litigation expenses, deterring them from bringing suit or adequately protecting their rights.  A class action will allow Class members whose claims are too small to warrant an individual action to be compensated for their losses.

68.     A class action will conserve judicial resources and promote a fair and consistent resolution of these claims.  Absent a class action, Class members would continue to incur harm without remedy, while Defendant would continue to reap the benefits of its misconduct.

## VI.    CAUSES OF ACTION

**FIRST CLAIM FOR RELIEF**
**(VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT,**
**N.J.S.A. § 56:8-1, et seq.)**

69.    Plaintiffs incorporate by reference paragraphs 1 through 68 above, on behalf of themselves and all others similarly situated, realleging same as if each and every allegation is fully set forth within.

70.     Mazda's conduct and/or that of its agents and/or independent contractors complained of herein constitutes acts, uses or employment by Mazda of unconscionable commercial practices, deception, fraud, false pretenses, false promises, misrepresentations and/or knowing concealment, suppression, or omission of material facts with the intent that owners and lessees of Mazda vehicles with the VVT assembly, including Plaintiffs and members of the class, would rely upon such concealment, suppression, or omission, in connection with the sale, marketing, advertisement and subsequent performance of the Mazda vehicles with the VVT assembly. Mazda's conduct herein is an unfair act or practice that has the capacity to and did deceive Plaintiffs and class members as consumers into believing that they were purchasing a vehicle with the VVT assembly that could be used safely and legally, entitled to the protection and remedies provided for by N.J.S.A. 56:8-1, et seq.

71.     Mazda is a "person" defined by N.J.S.A. 56:8-1(d).

72.     Plaintiffs are "persons" defined by N.J.S.A. 56:8-1(d).

73.     Mazda's conduct and/or that of its distributors occurred in the conduct of trade or commerce or the sale to Plaintiffs and class members, as defined in N.J.S.A. 56:8-1(e), of merchandise, Mazda with the VVT assembly, as defined in N.J.S.A. 56:8-1(c).

74.     All of the conduct alleged herein occurred in the course of Mazda's business. Mazda's conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions.

75.     As a result of the conduct complained of herein and Mazda's violation of the New Jersey Consumer Fraud Act, Plaintiffs and the class members have been damaged and have suffered an ascertainable loss of money or property capable of being calculated with a reasonable degree of certainty.

76.     In light of the aforesaid, Mazda and/or their employees and/or servants and/or agents violated N.J.S.A. 56:8-1, et seq. Mazda's conduct renders it liable for statutory treble damages, attorneys' fees, filing fees and costs under N.J.S.A. 56:8-19 and other relief.

77.     As set forth in the certification annexed to this pleading, Plaintiff complied with the requirements of N.J.S.A. 56:8-20, et seq.

**SECOND CLAIM FOR RELIEF**
**(VIOLATION OF MAGNUSON-MOSS WARRANTY ACT**
**(15 U.S.C. § 2301, *et seq.*))**

78.     Plaintiff incorporates by reference and realleges all paragraphs alleged herein.

79.     This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332 (a)-(d).

80.     Plaintiff is a "consumer" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

81.     Mazda is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

82.     The Defective Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

83.     15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

84.     Mazda's express warranties are written warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).  The Defective Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

85.     Mazda breached these warranties as described in more detail above, but generally by not repairing or adjusting the Defective Vehicles' materials and workmanship defects; providing Defective Vehicles not in merchantable condition and which present an unreasonable risk of sudden engine failure and are not fit for the ordinary purpose for which vehicles are used; providing Defective Vehicles that were not fully operational, safe, or reliable; and not curing defects and nonconformities once they were identified.

86.     Plaintiffs and Class members have had sufficient direct dealings with either the Defendant or its agents (dealerships) to establish privity of contract between Plaintiffs and the Class members.  Notwithstanding this, privity is not required in this case because Plaintiffs and Class members are intended third-party beneficiaries of contracts between Mazda and its dealers; specifically, they are the intended beneficiaries of Mazda's implied warranties.  The dealers were not intended to be the ultimate consumers of the Defective Vehicles and have no rights under the warranty agreements provided with the Defective Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only.  Finally, privity is

also not required because Plaintiffs' and Class members' Mazdas are dangerous instrumentalities due to the aforementioned defects and nonconformities.

87.     Plaintiffs fully satisfied any obligations under 15 U.S.C. § 2310(a)(3), and also provided Mazda an opportunity to cure, even though no such opportunity is required in these circumstances.

88.     Even so, requiring an informal dispute settlement procedure, or affording Mazda a reasonable opportunity to cure its breach of written warranties, would be unnecessary and futile.  At the time of sale or lease of each Defective Vehicle, Mazda knew, should have known, or was reckless in not knowing of its misrepresentations concerning the Defective Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design.  Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement – whether under the Magnuson-Moss Warranty Act or otherwise – that Plaintiff resort to an informal dispute resolution procedure and/or afford Mazda a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

89.     Plaintiffs and the Class would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them.  Because Mazda is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs and the Class have not re-accepted their Defective Vehicles by retaining them.

30

90.     The amount in controversy of Plaintiff's individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

91.     Plaintiffs seek to revoke their acceptance of the Defective Vehicles, or, in the alternative, seek all damages, including diminution in value of their vehicles, in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF
### (Breach of Express Warranty)

92.     Plaintiff incorporates the foregoing paragraphs by reference as though set forth fully herein.

93.     Mazda is and was at all relevant times a merchant with respect to motor vehicles.

94.     In the course of selling its vehicles, Mazda expressly warranted in writing that the Defective Vehicles were free from defects.

95.     Mazda breached the express warranty.  Contrary to Mazda's promise that "new Mazda cars and trucks will be free of defects," the vehicles were defective during the warranty period. In fact, the Defective Vehicles, including the vehicle purchased by Plaintiff, were defective from the point of manufacture and sale, thus rendering the product unmerchantable at the time of purchase.

96.     Mazda further breached the express warranty by failing to adequately provide coverage and to repair or correct defects in the VVT assembly of Defective Vehicles during the warranty period.

97.     Plaintiff took reasonable steps to notify Mazda within a reasonable time that his Defective Vehicle was not as represented by, among other things, presenting his Defective Vehicle to an authorized Mazda dealer for repairs.  Plaintiff was not required to provide notice of the defect to the remote manufacturer; in any event, Mazda received actual notice of the defect because Plaintiff presented his Defective Vehicle to an authorized Mazda dealer for repairs, and Mazda then improperly denied warranty coverage.  Any additional notice would be futile.

98.     Plaintiff and the Class have suffered harm. The failure of the Defective Vehicles to be as represented and the failure of Mazda to repair Defective Vehicles was a substantial factor in causing harm to Plaintiff and the Class.

WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

## FOURTH CLAIM FOR RELIEF
### (Breach of Implied Warranty)

99.     Plaintiff incorporates the foregoing paragraphs by reference as though set forth fully herein.

100.     Mazda is and was at all relevant times a merchant with respect to motor vehicles.

101.     Plaintiff purchased his Defective Vehicle from Mazda's authorized agent. At the time of purchase, Mazda and its authorized agents were in the business of

leasing and selling vehicles and/or by course of business held itself out as having special knowledge or skill regarding these vehicles.

102.    A warranty that the Defective Vehicles were in merchantable condition was implied by law in the instant transaction.

103.    The Defective Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used and/or were not of the same quality as those generally acceptable in the trade. In fact, the Defective Vehicles, including the vehicle purchased by Plaintiff, were defective from the point of manufacture and sale, thus rendering the product unmerchantable at the time of purchase. Specifically, the Defective Vehicles were designed, manufactured, distributed, and sold with a defective VVT assembly that Mazda knew was defective and likely to fail and result in catastrophic engine failure.

104.    Plaintiff and Class members have had sufficient direct dealings with either the Defendant or its agents (dealerships) to establish vertical privity of contract between themselves and Defendant.  Notwithstanding this, privity is not required in this case because Plaintiff and Class members are intended third-party beneficiaries of contracts between Mazda and its dealers; specifically, they are the intended beneficiaries of Mazda's implied warranties. The dealers were not intended to be the ultimate consumers of the Defective Vehicles and have no rights under the warranty agreements provided with the Defective Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only. Finally, privity is also not required

because Plaintiff's and Class members' Defective Vehicles are dangerous instrumentalities due to the aforementioned defects and nonconformities.

105.    Plaintiff took reasonable steps to notify Mazda within a reasonable time that his Defective Vehicle was not as represented by, among other things, presenting his Defective Vehicle to an authorized Mazda dealer for repairs.  Plaintiff was not required to provide notice of the defect to the remote manufacturer; in any event, Mazda received actual notice of the defect because Plaintiff presented his Defective Vehicle to an authorized Mazda dealer for repairs, and Mazda improperly denied warranty coverage.  Any additional notice would be futile.

106.    Plaintiff and the Class have suffered harm. Defendant's practice of selling the Defective Vehicles, which did not have the expected quality, was a substantial factor in causing harm to Plaintiff and the Class.

WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

## FIFTH CLAIM FOR RELIEF
### (Fraudulent Concealment)

107.    Plaintiff incorporates the foregoing paragraphs by reference as though set forth fully herein.

108.    As set forth above, Defendant concealed and/or suppressed material facts concerning VVT assembly defects in the Defective Vehicles. Mazda has had actual knowledge about defects in the VVT assembly of Defective Vehicles since at least 2007, yet it has attempted to hide this defect from Plaintiff, the Class, and the marketplace.

34

Despite its knowledge, Mazda failed to disclose the defect in the VVT assembly at the time Plaintiff and Class members purchased or leased their Defective Vehicles.

109.    Mazda owed Plaintiffs a duty to disclose the defective nature of the VVT assembly in Defective Vehicles, because it:

    a. Possessed exclusive knowledge of the defects in the VVT assembly of Defective Vehicles;

    b. Intentionally concealed the defects in the VVT assembly of Defective Vehicles through its marketing programs, Technical Service Bulletins, and its Special Service Program that Mazda designed to mislead owners and potential buyers of Defective Vehicles about the source and nature of the VVT defect; and/or

    c. Made incomplete representations about the source and nature of the VVT defect, while purposefully withholding material facts from Plaintiff and Class Members that contradicted these representations.

110.    Mazda had a duty to disclose omitted material facts because they were known and/or accessible only to Mazda, which had superior knowledge and access to the facts, and Mazda knew concealed facts were not known to or reasonably discoverable by Plaintiff and the Class. These concealed facts were material because they directly impact the reliability, workmanship, and safety of the Defective Vehicles. A failed VVT assembly and resulting engine failure are material concerns regarding the reliability, workmanship, and safety of vehicles. Defendant possessed exclusive

35

knowledge of the defects rendering Defective Vehicles inherently defective and less reliable than non-Defective Vehicles.

111.    In addition, Mazda had a duty to disclose concealed facts because Mazda consistently marketed their vehicles as being free from defects. As part of its bumper-to-bumper and powertrain warranties, Mazda has consistently represented that "new Mazda cars and trucks will be free of defects" during the specified warranty periods. As early as 2007, however, Mazda began issuing TSBs to dealers acknowledging defects "caused by the lock pin of the variable valve timing actuator not fully engaging." As discussed above, in January 2008, Mazda issued TSB 01-002/08, which again instructed authorized dealers to replace additional parts related to the Mazda VVT assembly and to use new repair procedures. While Mazda knew about and advised its authorized dealers about the latent defect in the VVT assembly of the potential vehicles, Mazda failed to disclose these facts to existing and potential purchasers and lessors of Defective Vehicles.

112.    Once Mazda made representations to potential purchasers, lessors, and the general public that "new Mazda cars and trucks will be free of defects," Mazda was under a duty to disclose these omitted facts.  This is because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

113.    Mazda actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiff and the Class to purchase Defective

36

Vehicles at a higher price than the vehicles' true value. Mazda further actively concealed and/or suppressed these material facts with the intent of avoiding its obligation to repair the VVT assembly of Defective Vehicles.

114.    Defendant still has not made full and adequate disclosures and continues to defraud Plaintiff, the Class, and the general public.

115.    Plaintiff and the Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiff's and the Class's actions were justified. Mazda was in exclusive control of the material facts and such facts were not known to the public or the Class.

116.    As a result of the concealment and/or suppression of the facts, Plaintiff and the Class sustained damage.

117.    Mazda's conduct was oppressive, fraudulent, malicious, and in reckless disregard the rights of Plaintiff and the Class. Mazda's conduct as described herein was despicable conduct because it was carried on by Mazda with a willful and conscious disregard of the rights or safety of others, subjecting Plaintiff and the Class to cruel and unjust hardship as a result. Mazda's conduct as described herein was deceitful and constituted concealment of a material fact known to Mazda, and it was carried out with the intention of thereby depriving Plaintiff and the Class of legal rights or otherwise causing injury to Plaintiff and the Class.  Mazda fraudulently concealed material facts about defects in the VVT assembly of Defective Vehicles, and it has continued to mislead owners of defective vehicles about the source and nature of defects in the VVT

assembly.  Mazda has done so with a profiteering motive and with the goal of avoiding the expense of correcting the defects in the VVT assembly of Defective Vehicles. Mazda's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

## VII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on his own behalf and on behalf of the class members, prays for judgment against Defendant as follows:

a.  For an order permitting this action to be maintained as a class action on behalf of the class members, appointing Plaintiff as a representative of all class members and his counsel to represent the class members;

b.  For an order awarding compensatory damages;

c.  For an order awarding restitution;

d.  For treble damages pursuant to N.J.S.A. 56:8-19, recovery of ascertainable losses for loss of money and/or property pursuant to N.J.S.A. 56:8-19;

e.  For remedies afforded fraud victims under the common law and/or pursuant to N.J.S.A. 2A:32-1, et seq.;

f.  For punitive or exemplary damages to the extent allowed by law;

g.  For an order enjoining Mazda from continuing to engage in the unlawful business practices described herein;

h. For an order requiring Mazda to provide restitution of all funds improperly obtained by Mazda as a result of such acts and practices declared by this Court to be an unlawful, fraudulent, or unfair business act or practice, a violation of laws, statutes, or regulations, or constituting unfair competition;

i. For an order requiring Mazda to create a fund available to remedy the defect and to order Mazda to bear the cost of notice to class members, as approved by the Court, of the availability of funds to remedy the defect

j. For an order for disgorgement of all profits and compensation improperly obtained by Mazda as a result of such acts and practices declared by this Court to be an unlawful, fraudulent, or unfair business act or practice, a violation of laws, statutes, or regulations, or constituting unfair competition;

k. For an order awarding pre-judgment and post-judgment interest;

l. For an order awarding reasonable attorneys' fees, filing fees, and costs of suit, including expert witness fees; and

m. For an order awarding such other and further relief, including injunctive and declaratory relief, as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of himself and all others similarly situated, hereby demands a trial by jury of all issues so triable.

Dated:  August 20, 2014

Respectfully submitted,

\_\_s/ Mitchell M. Breit_____
Mitchell M. Breit
SIMMONS HANLY CONROY
112 Madison Avenue
New York, NY 10016-7416
(212) 784-6422
mbreit@simmonsfirm.com

T. Christopher Tuck (*pro hac vice* application to be submitted)
RICHARDSON, PATRICK, WESTBROOK & BRICKMAN, LLC
1037 Chuck Dawley, Blvd.
Building A
Mt. Pleasant, SC  29464
(843) 727-6500
ctuck@rpwb.com

Terry W. West (*pro hac vice* application to be submitted)
Bradley C. West(*pro hac vice* application to be submitted)
THE WEST LAW FIRM
124 West Highland
Shawnee, OK  74802
(405) 275-0040
terry@thewestlawfirm.com
brad@thewestlawfirm.com

*Attorneys for Plaintiff*
*James Stevenson and the Class*

40

## CERTIFICATION OF SERVICE PURSUANT TO N.J.S.A. 56:8-20

As required by N.J.S.A. 56:8-20, the undersigned hereby certifies that on the below referenced date he caused a copy of the Complaint to be served upon the following offices via first class United States Mail, postage prepaid:

Office of the Attorney General
Richard J. Hughes Justice Complex
P.O. Box 80
Trenton, New Jersey 08625-0080.

I certify that the foregoing information in this certification is true and correct and if any of such information is willfully false that I am subject to punishment.

Dated:        August 20, 2014

__s/Mitchell M. Breit_____
Mitchell M. Breit
SIMMONS HANLY CONROY
112 Madison Avenue
New York, NY 10016-7416
(212) 784-6422
mbreit@simmonsfirm.com

41