**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                                    :
JAMES STEVENSON, on behalf of himself :
and all others similarly situated,                  :
                                                    :
           Plaintiff,                               :        Civ. Action No.: 14-5250 (FLW)(DEA)
                                                    :
v.                                                  :                  **OPINION**
                                                    :
MAZDA MOTOR OF AMERICA, INC.          :
                                                    :
           Defendant.                               :
_____:

**WOLFSON, District Judge**:

        In this putative class action, Plaintiff James Stevenson ("Plaintiff" or "Stevenson") brings

suit under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), alleging that

Defendant Mazda Motor of America, Inc. ("Defendant" or "Mazda") fraudulently concealed the

fact that certain of its vehicles contained a defective engine component. Plaintiff asserts the

following claims: Count 1, violation of the New Jersey Consumer Fraud Act (NJCFA); Count 2,

violation of the Magnuson-Moss Warranty Act, 15 U.S.C § 2301 *et seq.*; Count 3, breach of

express warranty; Count 4, breach of implied warranty; and Count 5, fraudulent concealment.

Defendant moves to dismiss Counts 1, 4, and 5 in their entirety and Counts 2 and 3 in part for

failure to state a claim.

        For the reasons expressed herein, Defendant's Motion to Dismiss is granted. The

following counts are dismissed in their entirety: Count 1, violation of the NJCFA; Count 4,

breach of implied warranty; and Count 5, fraudulent concealment. Count 2, violation of the

Magnuson-Moss Warranty Act, and Count 3, breach of express warranty, are dismissed in part; claims based on Defendant's express extension of warranty on the variable valve timing assembly survive.

**BACKGROUND**

The factual background of this case is taken from the Complaint, which for the purposes of this motion I accept as true, and from documents integral to the Complaint. Mazda is a California corporation which promotes, markets, manufactures, and distributes vehicles. Compl. ¶ 10. Plaintiff, a New Jersey resident, is the owner of a 2008 Mazda CX-7 vehicle, purchased in August 2009. *Id.* ¶ 53.

Mazda markets its vehicles with a warranty which provides coverage for repairs needed in the first few years following the purchase of a new vehicle. *Id.* ¶ 11. Mazda advertises that "new Mazda cars and trucks will be free of defects" during the warranty periods. *Id.* Such representations were allegedly made on Mazda's website, and in a manufacturer's warranty booklet that is provided as a part of the purchase and lease process. *Id.* ¶ 12. Mazda's website advertises two warranties: a "bumper-to-bumper" limited warranty, also described as a "new vehicle limited warranty" ("NVLW") and a "powertrain" limited warranty. *Id.* ¶¶ 14–16. With respect to 2008 vehicles, like Stevenson's, the NVLW period is 36 months or 36,000 miles, whichever comes first; the powertrain warranty period is 60 months or 60,000 miles, whichever comes first. *Id.* ¶ 14.

According to the Complaint, from 2001 to the present, Mazda has offered vehicles with "variable valve timing" ("VVT") equipped engines. *Id.* at 8, ¶ 19.[1] However, some of these engines suffer from a defect which causes one component of the VVT assembly, the "timing chain," to loosen or detach. *Id.* at 9, ¶ 19. The Complaint alleges that the following models are equipped with such defective engines: Mazda CX-7, Mazdaspeed 3, Mazdaspeed 6, Mazda 6 (2.3L), Mazda 3, Mazda5, and MX-5. *Id.* ¶ 20. The Complaint further alleges that the VVT assembly in these vehicles "was defective at the initial point of manufacture and sale." *Id.* ¶ 23.

Consequences of this defect allegedly include partial or total engine failure. *Id.* at 9, ¶ 19. The failure of a VVT assembly, according to the Complaint, "can cause a cascade of destruction throughout the engine." *Id.* ¶ 47. Where permanent failure of the engine occurs from the VVT defect, Mazda's repair procedure is to replace the entire engine. *Id.* ¶ 48. Furthermore, because the VVT defect can lead to engine failure while the vehicle is in operation, the defect creates a safety risk for drivers. *Id.* ¶ 49.[2]

The Complaint asserts that Mazda had "actual knowledge" about defects in the VVT assembly at least as early as 2007, based on a Technical Service Bulletin ("TSB") issued on November 29, 2007. *Id.* ¶ 24. That TSB, numbered 01-043/07, applied to three models: the 2006–2007 Mazdaspeed 6, the 2007 Mazdaspeed 3, and the 2007 CX-7. *Id.* ¶¶ 24–25. The November 2007 TSB stated that "[w]hen the engine is started, some vehicles may exhibit a loud ticking noise from the variable timing actuator at first start for a couple of seconds. This is

---

[1] While the paragraphs in the Complaint are largely labeled in numeric order, some paragraph numbers are repeated. Where this occurs, for clarity I have included the page number on which the paragraph begins.

[2] The Complaint alleges that even if a failed VVT assembly does not destroy an engine, repairs can nonetheless cost in excess of $3000, *id.* ¶ 47, and that class members have allegedly been charged upwards of $8000 to replace engines which failed as a result of the VVT assembly, *id.* ¶ 48. The question of class damages, however, is not relevant to the present motion.

caused by the lock pin of the variable valve timing actuator not fully engaging." *Id.* ¶ 24. The November 2007 TSB was superseded by TSB01-002/08, dated January 16, 2008, authorizing dealers to replace additional parts related to the VVT assembly and permitting new repair procedures. *Id.* ¶ 28. The TSB series relating to the VVT defect was updated at least seven times through February 2011, with each new TSB expanding the models and years of production to which the TSB series applies. *Id.* ¶ 30. The Complaint further alleges that Mazda made several attempts to engineer a remedy for the defect. *Id.* ¶ 27.

Although Mazda was aware of the VVT assembly defect, the Complaint alleges that Mazda failed to warn owners of the defect. *Id.* ¶ 32. Instead, Mazda allegedly "restricted dissemination of this knowledge to its authorized dealer service departments." *Id.* In addition, the TSBs allegedly instructed Mazda service personnel to repair defective VVT assemblies only if the problem was brought by verified customer complaints on vehicles eligible for warranty repair. *Id.* Further, the Complaint alleges that while the January 2008 TSB "instructed dealers to replace additional parts . . . and to use new repair procedures," owners whose vehicles were repaired in accordance with the earlier TSB instructions were not informed that the prior repair was inadequate. *Id.* ¶ 33.

In January 2012, Mazda sent a letter to certain vehicle owners, including Plaintiff, stating that Mazda was "conduct[ing] a Special Service Program ("SSP") to extend the warranty coverage for the specific repair of variable valve timing (VVT) noise and/or timing chain noise concern." *Id.* ¶ 36. The SSP extends the warranty coverage on the VVT assembly by one year or 10,000 miles. *Id.* The letter informs owners that "a loud ticking noise may be exhibited from the VVT when the engine is first started at cold condition." *Id.* ¶ 37. The Complaint alleges that this noise "means that engine failure is imminent." *Id.* However, the letter did not recommend that

owners deliver their vehicles for inspection, or warn owners to stop driving the vehicle if the loud ticking noise occurs. *Id.* ¶ 38.

The SSP program excludes vehicles made in certain years from coverage. *Id.* ¶ 41. In addition, the SSP warranty extension "does not apply if the problem is caused by poor vehicle maintenance," namely insufficient oil changes or use of engine oil with the incorrect viscosity. *Id.* ¶ 43. The Complaint asserts that "Mazda relies on this warranty condition as a pretext to deny warranty benefits to owners with a defective Mazda VVT assembly." *Id.*

The Complaint's specific allegations regarding Plaintiff follow. Plaintiff purchased a new 2008 Mazda CX-7 vehicle on August 22, 2009. *Id.* ¶ 53. The 2008 Warranty Information booklet, included with his purchase, stated "Mazda warrants that your new Mazda vehicle is free from defects in materials and workmanship, subject to the following conditions"; the conditions did not exclude the VVT assembly. *Id.* In January 2012, Plaintiff received the SSP notice, stating that his warranty coverage was extended on the VVT assembly "to 7 years (84 months) from the original warranty start date or 70,000 miles, whichever comes first." *Id.* Stevenson regularly maintained the vehicle by performing his own oil changes. *Id.*

On or around November 13, 2012, Plaintiffs' vehicle experienced a VVT-related failure. *Id.* At that time, the vehicle had 63,562 miles. *Id.* Mazda refused to cover the repairs under the warranty. *Id.* Plaintiff paid $3384.87 for repairs, and $960.02 for a rental car. *Id.*

The Complaint was filed on August 21, 2014, as a putative class action on behalf of "all adult persons domiciled or residing in New Jersey who purchased and/or leased at least one vehicle manufactured by Mazda with a defective VVT assembly"; *id.* ¶ 57, and asserts claims for (Count 1) violation of the New Jersey Consumer Fraud Act; (Count 2) violation of the Magnuson-Moss Warranty Act; (Count 3) breach of express warranty; (Count 4) breach of

implied warranty; (Count 5) fraudulent concealment. On November 17, 2014, Defendant filed

the present motion to dismiss Counts 1, 4, and 5 in their entirety, and Counts 2 and 3 in part,

pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6). At this stage, and in accordance with the grounds

for dismissal presented by Defendant, I will examine the Complaint only with respect to the

claims of the individually named Plaintiff and not the merits of the class claims.


**STANDARD OF REVIEW**

When reviewing a motion to dismiss on the pleadings, courts "accept all factual

allegations as true, construe the complaint in the light most favorable to the plaintiff, and

determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled

to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir.2008) (citation and quotations

omitted). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court clarified

the Rule 12(b)(6) standard: the factual allegations set forth in a complaint "must be enough to

raise a right to relief above the speculative level." *Id.* at 555. As the Third Circuit has stated,

"[t]he Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus:

'stating ... [a] claim requires a complaint with enough factual matter (taken as true) to suggest'

the required element. This 'does not impose a probability requirement at the pleading stage,' but

instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal

evidence of' the necessary element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 127 U.S. at

555); see also *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d

Cir.2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his

claim. The pleading standard is not akin to a probability requirement; to survive a motion to

dismiss, a complaint merely has to state a plausible claim for relief." (citations omitted)).

In affirming that *Twombly*'s standards apply to all motions to dismiss, the Supreme Court explained several principles. First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. Ultimately, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir.2009). However, "a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings ... [although a] limited exception exists for documents that are integral to or explicitly relied upon in the complaint." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 97 n. 6 (3d Cir. 2010) *cert. denied*, 132 S.Ct. 98 (2011) (citation and internal quotation marks omitted). Here, Defendant has submitted the SSP notice sent to Mazda owners in January 2012; because the Complaint explicitly relies on this notice, I may consider this document.[3]

The Third Circuit has reiterated that "judging the sufficiency of a pleading is a context-dependent exercise" and "[s]ome claims require more factual explication than others to state a

---

[3] Defendant's Motion was accompanied by a Request for Judicial Notice of the SSP notice under Fed. R. Evid. 201(b). This request is unnecessary, because "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3rd Cir. 1993). *But see In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002) (holding that "prior decisions of this court sufficiently support judicial notice of the three categories of documents" including "documents relied upon in the Complaint."). As Plaintiff has not disputed that this document is authentic, and Plaintiff explicitly relies on the document in the Complaint, the Court may consider it in this Motion.

plausible claim for relief." *Id.* at 98. That said, the Rule 8 pleading standard is applied "with the same level of rigor in all civil actions." *Id.* (quoting *Iqbal*, 556 U.S. at 684).

## DISCUSSION

### A. New Jersey Consumer Fraud Act

Count 1 of the Complaint asserts a violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-1, *et seq.* In order to state a claim under the NJCFA, a plaintiff must allege "(1) unlawful conduct by the defendant, (2) an ascertainable loss by the plaintiff, and (3) a causal relationship between the unlawful conduct and the ascertainable loss." *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 557 (2009).

 "It is well-established that NJCFA claims must meet the heightened pleading requirements of Fed. R. Civ. P. 9(b)." *Lieberson v. Johnson & Johnson Consumer Cos., Inc.*, 865 F. Supp. 2d 529, 538 (D.N.J. 2011) (citing *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007); *Arcand v. Brother Intern. Corp.,* 673 F.Supp.2d 282 (D.N.J. Nov. 30, 2009)). Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). That is, "the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). However, courts should "apply the rule with some flexibility and should not require plaintiffs to plead issues that may have been concealed by the defendants." *Torsiello v. Strobeck*, 955 F. Supp. 2d 300, 307 (D.N.J.2013) (internal quotation omitted). In the context of a class action, "the individual named plaintiffs' claims should each satisfy Rule 9(b)

independently." *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 975 F. Supp. 584, 597 (D.N.J. 1996).

Here, Plaintiff alleges three different unlawful acts. First, Plaintiff alleges that Mazda represented on its website and in its warranty booklets that "new Mazda cars and trucks will be free of defects," Compl. ¶¶ 12–16; this claim, Plaintiff alleges, was false with respect to the class vehicles because such vehicles "featured a defective VVT assembly." *Id.* ¶ 18. Second, Plaintiff alleges that Mazda "concealed the defect and its obligation to repair the defect." *Id.* ¶ 23. Third, Plaintiff asserts that when he purchased his own vehicle, "Mazda's authorized representative concealed facts regarding the latent defect in the VVT assembly" of his vehicle. *Id.* ¶ 54. Mazda argues that two of the unlawful acts—the general concealment of the defect, and the specific concealment by Mazda's representative when Plaintiff purchased his vehicle—lack the specificity required by Rule 9(b). With regard to the third unlawful act, the alleged misrepresentations on Mazda's website and in the warranty booklet, Mazda contends that Plaintiff has not sufficiently alleged a causal nexus with his ascertainable loss. Mazda does not, however, contest the fact that Plaintiff suffered an ascertainable loss. Indeed, it is clear that the $3384.87 which Plaintiff paid to cover the cost of the repair to his vehicle, as well as the $960.02 for a rental car, are sufficient losses under the NJCFA.

First, Defendant argues that two of the alleged unlawful acts lack specificity under Rule 9(b). With regard to the alleged concealment of facts by Mazda's representative at the time Plaintiff purchased his vehicle, Defendant argues that Plaintiff fails to allege "*who* exactly spoke with Plaintiff, *what* the representative specifically said to Plaintiff that constituted concealment, *what* Plaintiff found to be material about the representative's statements, and *when* these statements were made to Plaintiff." Def. Br. at 6. It is true that Plaintiff has not alleged any

specific facts regarding the purchase of his Mazda CX-7, beyond the date of purchase. To the extent, therefore, the Plaintiff's NJCFA claim relies on the misrepresentations or omissions of the Mazda representative at the time of the purchase, such claim must fail.

The second allegedly unlawful act is a material omission: that Mazda concealed the defects from the owners of the vehicles. Mazda again argues that Plaintiff has not met the requirements of Rule 9(b); specifically, Mazda contends that Plaintiff has failed to allege that Mazda "knew with certainty that the VVT in his vehicle was defective." Mazda Br. at 9. According to Mazda, while Plaintiff cites the November 2007 TSB to show that Mazda possessed knowledge of the defect "at least as early as 2007," the TSB applied only to three models of vehicles, and did not include Plaintiff's 2008 CX-7. *Id.* Nor does the Complaint allege that any other TSB or customer service program related to a VVT assembly included Plaintiffs' 2008 CX-7, until the SSP issued in January 2012. *Id.* Accordingly, Mazda asserts that Plaintiff's conclusion "that because Mazda issued a TSB in 2007 related to the VVT system in other vehicles, it had knowledge of the defect in his vehicle," is "speculative conjecture" and therefore insufficient to show knowledge. *Id.* at 10.

Unlawful conduct "fall[s] into three general categories: affirmative acts, knowing omissions, and regulation violations." *Frederico,* 507 F.3d at 202. When asserting an NJCFA claim on the basis of a material omission, "the plaintiff must show that the defendant acted with knowledge, and intent is an essential element of the fraud." *Bosland*, 197 N.J. at 556. In contrast, "[o]ne who makes an affirmative misrepresentation is liable even in the absence of knowledge of the falsity of the misrepresentation, negligence, or the intent to deceive." *Gennari v. Weichert*

*Co. Realtors*, 148 N.J. 582, 605 (1997).[4] If a plaintiff does not allege that the defendant had knowledge of a defect, failing to inform the plaintiff of that defect will not be actionable under the NJCFA.

Courts in this Circuit have found that, in order to show knowledge of a defect, consumers cannot rely on general allegations that a manufacturer had received complaints about similar makes and models of vehicles. For example, in *Glass v. BMW of N. Am., LLC*, 2011 WL 6887721 (D.N.J. Dec. 29, 2011), the complaint there alleged that the power steering system in certain BMW MINI Cooper models was "dangerously defective." *Id.* at *1. The plaintiff owned a used 2005 MINI Cooper, and claimed that the defendant knew about the defect based on a "77 complaints of power steering loss" among 2002–2007 MINI Cooper vehicles, and a National Highway Traffic Safety Administration ("NHTSA") "investigation into 2002–2003 MINI Cooper vehicles." *Id.* at *1–2. The court held that the Complaint did not meet Rule 9(b) requirements because "the Complaint—as currently drafted—at best alleges that BMW NA knew that the power steering pump maintained in MINI Cooper vehicles—model years 2002–2009—*might* be defective and that such a defect might not manifest itself until after the expiration of the warranty period." *Id.* at *8. *See also McQueen v. BMW of N. Am.*, 2014 WL 656619 at *4 (D.N.J. Feb. 20, 2014) (finding insufficient under Rule 9(b) allegations that

---

[4] Defendant cites *Alban v. BMW of N. Am., LLC*, 2010 WL 3636253 at *10 (D.N.J. Sept. 8, 2010) to suggest that a plaintiff is required to allege that the defendant "[knew] with certainty that the product [would] fail." However, *Alban* and the cases it relies on involve the situation where "the allegedly-defective product was covered by a warranty," but "the defendant artificially limited the warranty period in an effort to avoid the cost of repairs." *Id.* In that situation, the defendant must know that the defect would manifest after the limited warranty period. *Id.*, *see also Maniscalco v. Brother Internat'l Corp.*, 637 F. Supp. 2d 494, 501–02 (D.N.J. 2009). Here, in contrast, there is no allegation that Mazda artificially limited the warranty period to avoid covering the costs of the VVT defect; in fact, Plaintiff alleges that Mazda extended the warranty on the VVT assembly, though it ultimately refused to cover the repair.

11

defendant received "less than ten complaints" about "failures" in similar model vehicles); *Osness v. Lasko Prods., Inc.*, 868 F. Supp. 2d 402, 409 (E.D. Pa. 2012) ("the fact that Lasko knew of the defect at the time of the 2006 recall is not sufficient to establish that Lasko knew of the defect when it sold the fans that were subject to the 2011 recall.").

Here, to show that Mazda had knowledge of the VVT defect, the Complaint relies primarily on the issuance of TSBs. According to the Complaint, the November 2007 TSB applied to "the 2006–2007 Mazdaspeed6, 2007 Mazdaspeed3, and the 2007 CX-7, all with manufacture dates before April 1, 2007." Compl. ¶ 25. The August 2010 TSB expanded the reach of the VVT TSB series to "the other Mazda models that use a non-turbocharged engine." *Id.* ¶ 29. The Complaint further alleges that the various updates to the TSB series resulted in "expansion of the models and years of production to which the TSB applies." *Id.* ¶ 30. In addition to the TSBs, the Complaint includes customer complaints made to the National Highway Traffic Safety Administration between 2010 and 2012 related to VVT assemblies. *Id.* ¶ 31.

None of the allegations in the Complaint, however, connect the TSB series addressing the VVT defect to Plaintiff's 2008 Mazda CX-7. Notably, although the Complaint relies almost entirely on the TSBs to show that Mazda had knowledge of the VVT defect, the TSBs were not attached to the Complaint, nor have they been submitted with any briefs; the Court is therefore left only with the allegations made in the Complaint.[5] These allegations only state that the first

---

[5] Mazda also notes that courts have hesitated to find that TSBs are proof of fraud, "because such a practice may discourage manufacturers to respond to customers and/or agencies investigating potential defects." *Glass v. BMW of N. Am., LLC*, 2011 WL 6887721 at *8 n.11 (D.N.J. Dec. 29, 2011); *see also Alban*, 2010 WL 3636253 at *12; *Wiseberg v. Toyota Motor Corp.*, 2012 WL 1108542 at *4 n.2. *But see Skeen v. BMW of N. Am., LLC*, 2014 WL 283628 at *10 (D.N.J. Jan. 24, 2012) (refusing to discuss admissibility of TSBs under Fed. R. Evid. 407 and stating that "the

TSB, from November 2007, applied to 2007 CX-7 vehicles; the Complaint does not allege that later-issued TSBs applied to CX-7 models in other production years, or to all Mazda vehicles with VVT assemblies. While the Complaint avers that the TSBs applied to "the other" models with non-turbocharged engines, it does not state whether the CX-7 is such a model. Moreover, the second TSB described in the Complaint was issued in August 2010—after Plaintiff purchased his vehicle. At best, then, as in *Glass*, the Complaint shows that Mazda was aware that the VVT assembly in an earlier model of Plaintiffs' vehicle "*might* be defective." *Glass*, 2011 WL 6887721 at *8. The pleadings are insufficient as they fail to allege that Mazda had knowledge of the VVT defect in Plaintiff's vehicle, a 2008 CX-7, at or before the time of the sale, or indeed at any point prior to issuing the SSP.

Further, to the extent that Plaintiff's NJCFA claim relies on consumer complaints made to the NHTSA, these complaints were all made well after Plaintiff purchased his vehicle, and so they cannot show that Mazda was aware of the defect at that time. Because Plaintiff has not sufficiently alleged that Mazda was aware of the defect in his car, Plaintiff has failed to allege that Mazda acted unlawfully in failing to inform him of the defect.

Plaintiff's third allegation of unlawful conduct is based on the alleged misrepresentations made on Mazda's website and in the warranty booklets. Mazda does not challenge this assertion for failing to specifically allege unlawful conduct; rather, with regard to these alleged misrepresentations, Mazda argues that Plaintiff has failed to allege the third element of an NJCFA claim, namely a causal relationship or "link" between the alleged misrepresentations and Plaintiff's ascertainable loss. Def. Br. at 6–7. *See Frederico*, 507 F. 3d at 203. Mazda points out

---

TSB helps render plausible Plaintiffs' allegations that Defendants knew with certainty the part would fail.").

that the Complaint provides statements from Mazda's website and warranty booklets, but Plaintiff does not allege when such statements were made or whether Plaintiff was exposed to those statements, *id.* at 7, and therefore, Plaintiff has not adequately plead that the statements caused him to purchase his vehicle.

The NJCFA "does not require that the allegedly unlawful conduct serve as the lone cause of Plaintiffs' loss, but merely that it be a cause." *Arcand v. Brother Internat'l Corp.*, 673 F. Supp. 2d 282, 303 (D.N.J. 2009). Nonetheless, where a plaintiff makes an NJCFA claim based on a misrepresentation, the "causal nexus" element may not be stated in "general and conclusory terms." *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 526 (D.N.J. 2008). In *Dewey*, for example, the plaintiffs based their claims on alleged misrepresentations made on the defendant's website, yet "[did] not allege when the statements were made or at what point—if ever—each Plaintiff was exposed to one or more of the statements." *Id.* at 526–27. "Without this information, Plaintiffs have not properly plead a 'causal nexus' with the particularity required by Rule 9(b)." *Id.* at 527. Accordingly, the court dismissed the NJCFA claims with regard to the allegedly fraudulent statements. *Id.*

Plaintiff's Complaint suffers from the same deficiency. Plaintiff cites to Mazda's website, and asserts, generally, that "Purchasers of Mazda vehicles, including Plaintiff and class members, purchase their vehicles trusting and relying on Mazda that they would be free of defects during the warranty period." Compl. at ¶ 17. The Complaint further states that "Mazda's statements were intended to and did cause consumers to purchase or lease Mazda vehicles." *Id.* However, Plaintiff has not alleged when <u>he</u> viewed the statements on the Mazda website, or if

such statements were posted at the time he purchased his vehicle.[6] Similarly, while Plaintiff cites to his own warranty booklet, he does not state whether he viewed this booklet prior to purchasing the vehicle. *Id.* at ¶ 13. Plaintiff has therefore not alleged specific facts to show that Mazda's misrepresentations on its websites and in the warranty booklet were a cause of his loss. Therefore, the portion of Plaintiff's NJCFA claim based on the affirmative representations made on Mazda's website or in the warranty booklets is dismissed.

Plaintiff's NJCFA claim is dismissed without prejudice. Plaintiff fails to allege with specificity that Mazda knew that the VVT defect existed in his 2008 CX-7 vehicle until the 2012 SSP, and has not alleged any facts related to material misrepresentations or omissions made to him at the time of sale. The Complaint further fails to allege a causal nexus between the affirmative misrepresentations on Mazda's website and Plaintiff's ascertainable loss. As there are no other bases for Plaintiffs' NJCFA claim, Count 1 of the Complaint is dismissed in its entirety.

### B. Fraudulent Concealment

Mazda next asserts that Plaintiffs' claim for fraudulent concealment, asserted in Count 5, should be dismissed, also for failing to meet the Rule 9(b) heightened pleading standard. To plead fraudulent concealment, a form of common-law fraud, a plaintiff must allege "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997). "The deliberate suppression of a material fact that should be disclosed is viewed as equivalent to a material misrepresentation . . . which will support a common law fraud

---

[6] I note that Plaintiff cites to statements regarding 2010 Mazda vehicles. Because Plaintiff purchased his 2008 model vehicle in 2009, it seems unlikely that Plaintiff could have seen or relied on this statement at the time he purchased his vehicle.

action." *Winslow v. Corporate Express, Inc.*, 364 N.J. Super. 128, 139 (App. Div. 2003). The

elements of fraud must be pled under the heightened standards of Fed. R. Evid. 9(b). *Kuzian v.*

*Electrolux Home Prods., Inc.*, 937 F. Supp. 2d 599, 615 (D.N.J. 2013).  The Complaint alleges

that "Defendant concealed and/or suppressed material facts concerning VVT assembly defects in

the Defective Vehicles." Compl. ¶ 108.

Mazda asserts that Plaintiff's fraudulent concealment claim fails on three grounds. First,

Mazda argues that "[j]ust as with Plaintiff's NJCFA [claim], Plaintiff fails to allege material

misrepresentations and omissions, when the material misrepresentations were made, and how the

material misrepresentations were made." Def. Br. at 12. As discussed above, to the extent that

Plaintiff's claim relies on material misrepresentations or omissions made by a Mazda

representative at the time of sale, Plaintiff has not provided any facts to support this claim, much

less facts that meet the heightened pleading requirements of Fed. R. Civ. P. 9(b).

Referring back to its argument on the NJCFA claim based on affirmative

misrepresentations, Mazda next contends that the "reliance" element of fraud is more stringent

than the "causal nexus" claim of the NJCFA. Def Br. at 12. Therefore, Mazda argues, Plaintiff

cannot claim fraud with regard to the misrepresentations on Mazda's website and warranty

booklet for the same reason Plaintiff could not maintain an NJCFA claim on that basis. *Id.*

Plaintiff does not argue against this point, but merely states that the argument is "misplaced"

because "this claim is based on Mazda's fraudulent concealment." Pl. Br. at 12. Mazda is correct

that "the causal nexus requirement of the CFA is less stringent than the reliance element of

common law fraud." *Dewey*, 558 F. Supp. 2d at 527. Accordingly, to the extent that Plaintiff's

fraudulent concealment claim is, like the NJCFA claim, based on the affirmative

misrepresentations allegedly put forth by Mazda on its website and in the warranty booklets, the claim is dismissed.

Finally, Mazda argues that it had no duty to disclose the alleged defect. Def. Br. at 12. Under New Jersey law, "where a claim for fraud is based on silence or concealment, New Jersey courts will not imply a duty to disclose, unless such disclosure is necessary to make a previous statement true or the parties share a 'special relationship.'" *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1185 (3d Cir. 1993). The three types of relationship which will give rise to a duty to disclose are:

> "(1) fiduciary relationships, such as principal and agent, client and attorney, or beneficiary and trustee; (2) relationships where one party expressly reposits trust in another party, or else from the circumstances, such trust necessarily is implied; and (3) relationships involving transactions so intrinsically fiduciary that a degree of trust and confidence is required to protect the parties."

[*Id.*]

Plaintiff argues that Mazda had a duty to disclose, because "[Plaintiff] trusted and relied on Mazda." Pl. Br. at 13, Compl. ¶¶ 17, 53–54. However, the mere fact of that trust is insufficient to show a special relationship requiring a duty to disclose. Rather, for a duty to disclose to arise, one party must "expressly repose[] a trust and confidence in the other; or else from the circumstances of the case, the nature of their dealings, or their position towards each other, such a trust and confidence in the particular case [must be] necessarily implied." *Berman v. Gurwicz*, 189 N.J. Super. 89, 93–94 (Law Div. 1981). Here, Plaintiff does not allege that he "expressly" reposed trust in Mazda—that is, Plaintiff does not claim that he informed Mazda that he was relying on their representations.

Plaintiff has additionally not alleged any facts suggesting that trust or confidence must be implied. The conditions under which courts have found that trust was implied are cases where

17

one party "encouraged the [other party] to repose special trust or confidence in its advice," *United Jersey Bank v. Kensey*, 306 N.J. Super. 540, 554 (App. Div. 1997), or where parties "represent themselves as experts in a field and invite the reliance of another party on such expertise," *Jeffrey Rapaport M.D., P.A. v. Robin S. Weingast and Assocs., Inc.*, 859 F. Supp. 2d 706, 718–19 (2012). Indeed, in a similar situation, the New Jersey Appellate Division found that a car manufacturer had no duty to disclose a defect to purchasers of its cars. *Green v. G.M.C.*, 2003 WL 21730592 at *8 (N.J. App. Div. July 10, 2003). In that case, the plaintiffs alleged that "an unmanifested design defect in their cars' front seat, single-recliner mechanism renders their cars not reasonably crashworthy in moderate, rear impact auto accidents." *Id.* at *1. The Appellate Division found that "since neither defendants nor the dealers from whom plaintiffs purchased their cars did anything to encourage plaintiffs to repose special trust or confidence in their advice, thereby inducing plaintiffs' reliance," the manufacturers had no duty to disclose the alleged defect. *Id.* at *8. *See also Coba v. Ford Motor Co.*, 2013 WL 244687 at *12 (D.N.J. Jan. 22, 2013) ("New Jersey Courts have found no special relationship between individual consumers and automobile manufacturers that would impose a duty to disclose on the manufacturers"); *Majdipour v. Jaguar Land Rover N. Am., LLC*, 2015 WL 1270958 at *8 (D.N.J. March 18, 2015) (same). Similarly, here, there are no allegations to suggest that Mazda did anything that would have encouraged Plaintiff to place particular trust or confidence in it; accordingly, this cannot be a basis for a duty to disclose.

Plaintiff next asserts that Mazda had a duty to disclose the defect because the knowledge of the defect was "known and/or accessible only to Mazda," Compl. ¶ 110, and that "Mazda knew that these concealed facts were not known or reasonably discoverable to Plaintiff," Pl. Opp. at 13. However, as previously stated, under New Jersey law, an implied duty to disclose is

18

limited to situations where "such disclosure is necessary to make a previous statement true or the parties share a 'special relationship.'" *Lightning Lube, Inc.*, 4 F.3d at 1185. While other states impose a duty to disclose where one party has superior knowledge, *see Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank*, 57 F.3d 146, 155 (2d Cir.1995) (New York); *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336, (Cal. Ct. App.1997), in New Jersey such knowledge does not create a duty to disclose. *See Berman*, 189 N.J. Super. at 94 ("If either party to a transaction conceals some fact which is material, which is within his own knowledge, and which it is his duty to disclose, he is guilty of actual fraud" (emphasis in original)); *Majdipour*, 2015 WL 1270958 at *8 (finding conflict with New York law because "superior knowledge does not create a duty to disclose under New Jersey law.").

Finally, Plaintiff alleges that because Mazda represented to purchasers that "new Mazda cars and trucks will be free of defects," Mazda had a duty to disclose because "where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated." Compl. ¶ 112; Pl. Opp. at 13–14. Indeed, under New Jersey law "[p]artial disclosure may amount to fraud." *Berman*, 189 N.J. Super. at 93. The rule, as laid out in *Berman*, is that if a party "volunteers to speak and to convey information which may influence the conduct of the other party, he is bound to discover the whole truth. A partial statement then becomes a fraudulent concealment, and even amounts to a false and fraudulent misrepresentation." *Id.* at 92–93; *see also Voilas v. General Motors Corp.*, 170 F.3d 367, 378 (3d Cir. 1999) ("Even where no duty to speak exists, one who elects to speak must tell the truth when it is apparent that another may reasonably rely on the statements made."). For example, where a developer and broker chose to "enhance the saleability of . . . homes" by advertising that "the area was safe to go 'hiking in the woods,' that children could grow up in the 'healthy, fresh,

country air' and that country clubs and shopping malls were nearby," the New Jersey Appellate Division found that "the seller and broker were obligated to disclose the existence of a landfill which could have a substantial negative impact upon the value of the homes and the quality of life in the area." *Strawn v. Caruso*, 271 N.J. Super. 88, 105 (App. Div. 1994).

However, as argued by Plaintiff, the statement "new Mazda cars and trucks will be free of defects" is not a "partial disclosure," but rather an affirmative misrepresentation. In contrast to *Strawn*, in which the statements made by the seller gave an incomplete picture of the areas surrounding the homes for sale, according to the Complaint the statements made by Mazda were, in fact, false. Rather than being "free of defects," the Complaint alleges that "Mazda vehicles at issue . . . featured a defective VVT assembly. Such vehicles were defective with normal use and maintenance during the warranty period." Compl. ¶ 18.

As has already been discussed, the statements that Plaintiff points to as "partial disclosures" or affirmative misrepresentations are alleged to be taken from Mazda's website and warranty booklets, yet Plaintiff does not allege when he was exposed to such statements. Accordingly, Plaintiff cannot claim that he relied on such statements in purchasing his vehicle. In the absence of specific allegations of reliance, Plaintiff cannot maintain a claim for fraud.

Because Plaintiff has failed to plead reliance on the alleged misrepresentations, and has likewise failed to show that Mazda had a duty to disclose the alleged defect, Plaintiff's claim for fraudulent concealment is dismissed without prejudice.

### C. Express Warranty

The Complaint alleges two factual bases for the breach of express warranty claim. The Complaint alleges that Mazda "breached the express warranty by failing to adequately provide coverage and to repair or correct defects in the VVT assembly of Defective Vehicles during the

warranty period." *Id.* ¶ 96. Because an extended warranty was provided for VVT repairs, *see id.* ¶ 36, Mazda concedes that this allegation adequately states a cause of action for breach of express warranty. Def. Br. at 12 n. 1.

The Complaint additionally alleges that "[c]ontrary to Mazda's promise that 'new Mazda cars and trucks will be free of defects,' the vehicles were defective during the warranty period." Compl. ¶ 95. However, both warranties were limited: the NVLW period was limited to 36 months or 36,000 miles, whichever came first, while the powertrain warranty period was limited to 60 months or 60,000 miles, again whichever came first. *Id.* ¶ 14, Ex. A. The alleged defect was discovered when Plaintiff had 63,562 miles on his odometer. *Id.* ¶ 53. Because both warranties had expired, Mazda asserts that Plaintiff cannot bring a claim for breach of express warranty on this basis. Def. Br. at 13.

The general rule is that "an express warranty does not cover repairs made after the applicable time has elapsed." *Duquesne Light Co. v. Westinghouse Elec. Corp*, 66 F.3d 604, 616 (3d Cir. 1995); *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 518 (D.N.J. 2008). Further, "'latent defects' discovered after the term of the warranty are not actionable." *Duquesne*, 66 F.3d at 616. Here, the guarantee that "new Mazda cars and trucks will be free of defects" was part of the original warranties, which had expired at the time the defect was discovered. Accordingly, to the extent that the breach of express warranty claim relies on this statement, it must be dismissed.

Plaintiff notes that the SSP "extend[ed] his warranty coverage for the VVT assembly to 7 years (84 months) from the original start date or 70,000 miles," this extension, by its terms, only applied to the VVT assembly. It is clear that the VVT defect, when discovered, was covered by this extended warranty—indeed, Mazda concedes that Plaintiff has stated a claim on this ground. However, there is no evidence to suggest that the original NVLW and powertrain warranties

21

were extended in any other way. Thus, Plaintiff cannot assert a breach of express warranty under the original NVLW and powertrain warranties beyond the time limits set by those policies. Accordingly, Plaintiffs' claim for breach of express warranty, Count 3, is dismissed to the extent that it relies on the NVLW or the powertrain warranty.

### D. Breach of Implied Warranty

The Complaint asserts a breach of the implied warranty of merchantability, alleging that the "Defective Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used and/or were not of the same quality as those generally acceptable in the trade." Compl. ¶ 103. Mazda argues that the implied warranty of merchantability is limited to the duration of the NVLW—that is, 36 months or 36,000 miles—which had expired well before the alleged defect manifested. Def. Br. at 15. Plaintiff counters that the warranty coverage was extended to 7 years or 70,000 miles, and that the defect arose within this period. Pl. Opp. at 16.

New Jersey has adopted the Uniform Commercial Code, which provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." N.J. Stat. Ann. 12A:2-314. The implied warranty of merchantability means that "the thing sold is reasonably fit for the general purpose for which it is manufactured and sold." *Hughes v. Panasonic Consumer Elecs. Co.*, 2011 WL 2976839 at *22 (D.N.J. July 21, 2011). "The implied warranty of merchantability does not impose a general requirement that goods precisely fulfill the expectation of the buyer. Instead, it provides for a minimum level of quality." *Lieberson v. Johnson & Johnson Consumer Cos., Inc.*, 865 F. Supp. 2d 529, 542 (D.N.J. 2011). "For an automobile, the implied warranty of merchantability is breached only when a defect renders the vehicle unfit for its ordinary purpose of providing

22

transportation for its owner." *Sheris v. Nissan N. Am., Inc.*, 2008 WL 2354908 at *6 (D.N.J. June 3, 2008).

For a modification of the implied warranty of merchantability to be lawful, "the language must mention merchantability and in case of a writing must be conspicuous." N.J. Stat. Ann. 12A:2-316. Here, Plaintiff's warranty booklet provided that "All Implied Warranties, including but not limited to any regarding marketability or fitness for a particular purpose, are limited to the duration of this [NVLW] warranty." (Compl. Ex. A). The language is in bold, and set off in its own paragraph, in compliance with the law. Thus, the implied warranty of merchantability is plainly limited to the NVLW period—that is, 36 months or 36,000 miles—which had expired at the time the defect was discovered. While the express warranty on the VVT assembly was extended to 7 years or 70,000 miles, the time limit imposed on the implied warranty of merchantability by the warranty booklet was not altered by the SSP.

Furthermore, numerous cases in this District have found that a plaintiff cannot assert a claim for breach of the implied warranty of merchantability where a warranty period has expired at the time a defect was discovered. *See, e.g.*, *Glass*, 2011 WL 6887721 at *14 (finding that "the alleged defect was discovered after the term of the warranty, and is therefore not actionable"); *Hughes*, 2011 WL 2976839 at *24 ("plaintiffs' implied warranty claims do not survive in light of the one-year warranty period"); *Suddreth v. Mercedes-Benz, LLC*, 2011 WL 5240965 at *4 (D.N.J. Oct. 31, 2011) (holding that plaintiffs' implied warranty claims "at bottom fail for the same reasons that their express warranty claims fail, as the implied warranties of merchantability are limited to the same term as the express warranty"); *Nobile v. Ford Motor Co.*, 2011 WL 900119 at *4 (D.N.J. March 14, 2011) (holding that because "the implied warranties are limited . . . to the time period covered by the written warranties"; because the malfunction occurred

"after the expiration of the warranty period, therefore Plaintiffs have failed to state a claim upon which relief could be granted."); *McCalley v. Samsung Elecs. Am., Inc.*, 2008 WL 878402 at *7 (D.N.J. March 31, 2008) ("Plaintiff's breach of implied warranty claim fails because the duration of the implied warranty period is consistent with the express warranty period, or in other words one year. . . . Therefore at the time [that Plaintiff's Television malfunctioned], no warranty was any longer in effect.").

Similarly, courts in this District and others have held that the warrant of merchantability is not breached where a car has been driven for years before a defect manifested. *See Glass*, 2011 WL 6887721 at *1, *15 (finding no breach where "power steering pump had melted," but "vehicle has been driven without problems for five years" and Plaintiff "still drives her [vehicle] today"); *Sheris*, 2008 WL 2354908 at *5–6 ("In light of the undisputed facts that Plaintiff was able to drive his [vehicle] for 20,618 miles and for about two years before he needed to replace his brake pads and rotors, Plaintiff has failed to allege factually what made his [vehicle] unmerchantable or unsafe for driving"); *Skeen*, 2014 WL 283628 at * 16 ("there will typically be no claim for breach of implied warranty where plaintiffs have driven their cars without problems for years."); *In re Nissan Radiator*, 2013 WL 4080946 at *8 (S.D.N.Y. May 30, 2013) (stating that implied warranty claims for "high mileage Class members" would be barred; "because the vehicles have been driven for tens of thousands of miles without difficulty, the vehicles are merchantable as a matter of law.").

These holdings are not universal. For example, in *Henderson v. Volvo Cars of N. Am., Inc.*, 2010 WL 2925913 (D.N.J. July 21, 2010), Plaintiffs alleged that "the class vehicles are not fit for the ordinary purpose of driving" because defects "may cause the vehicles to enter an emergency 'Limp Mode' and/or sudden and unexpected transmission failure whereby the

24

vehicles will not accelerate and/or move under their own power." *Id.* at *9. The plaintiffs became

aware of the problem after the 50,000 mile express warranty limit. *Id.* at *2. The court found a

material question of fact as to whether "an implied warranty of merchantability claim may

extend beyond the limits of an express warranty to the time when a latent defect arises in an

automobile." *Id.* at *10. I note, however, that in *Henderson*, there was no evidence of an express

time limitation attached to the implied warranty of merchantability; moreover, the plaintiffs had

challenged the express warranty limit as unconscionable. *Id.* at *9.

Here, Plaintiff admittedly drove his car over 65,000 miles before the defect manifested

itself, and Plaintiff does not contend that the defect prevented him from driving the car after the

repair. These facts casts substantial doubt on his claim that the car was unfit for its purpose of

providing transportation. More importantly, though, the implied warranty of merchantability was

plainly limited to the period of the NVLW, 36 months or 36,000 miles. This limit was not

extended by the extension of the warranty on the VVT assembly. Accordingly, Plaintiff's claim

for breach of the implied warranty of merchantability is dismissed.

### E. Magnuson-Moss Warranty Act

The Magnuson-Moss Warranty Act provides that "a consumer who is damaged by the

failure of a supplier, warrantor, or service contractor to comply with any obligation under this

chapter, or under a written warranty, implied warranty, or service contract, may bring suit for

damages and other legal and equitable relief." 15 U.S.C. § 2310(d)(1). "Magnuson-Moss claims

based on breaches of express and implied warranties under state law depend upon those state law

claims." *Cooper v. Samsung Electronics Am., Inc.*, Civ. No. 07-3853, 2008 WL 4513924, at *6

(D.N.J. Sept. 30, 2008) *aff'd*, 374 F. App'x 250 (3d Cir. 2010); *see also In re Ford Motor Co.

Ignition Switch Prods. Liability Litig.*, 19 F. Supp. 2d 263, 267 (D.N.J. 1998) ("in order for

25

plaintiffs to state a claim for relief against Ford under the Magnuson–Moss Act, they must first establish a claim for breach of express warranty, under an applicable state law").

Because Plaintiff's claim for breach of implied warranty is dismissed in its entirety, Plaintiff cannot bring a claim under the Magnuson-Moss Warranty Act on that basis. In addition, Plaintiff's claim for breach of express warranty has been dismissed with respect to Mazda's alleged promise to provide a "defect-free vehicle" in the original NVLW and powertrain warranty. The Magnuson-Moss count must also be dismissed with respect to that claim. Accordingly, the only Magnuson-Moss claim remaining is a breach of express warranty with respect to the extended warranty on the VVT assembly.

**CONCLUSION**

For the reasons stated above, Count 1, violation of the NJCFA, and Count 5, fraudulent concealment, are dismissed in their entirety without prejudice; Count 4, breach of implied warranty is dismissed in its entirety. In addition, Count 2, violation of the Magnuson-Moss Warranty Act, and Count 3, breach of express warranty, are dismissed except with respect to Plaintiff's claims resulting from the extended warranty on the VVT assembly.

An appropriate order shall follow.


Date:   June 2, 2015

                                                    /s/ Freda L. Wolfson
                                                  Hon. Freda L. Wolfson, U.S.D.J.